UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:17-cr-69 |
| v. ) | |
| ) | JUDGE MATTICE |
| BRANDON HORTON ) | MAGISTRATE JUDGE LEE |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Brandon Horton, and the defendant's attorney, Daniel Ripper, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) the lesser included of Count One, Conspiracy to distribute and possess with intent to distribute five grams or more of methamphetamine (actual) or fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841 (a)(1), and 841(b)(1)(B).

2. The punishment for this offense is as follows: Because the defendant has a prior felony drug conviction, imprisonment for a term of no less than ten years and up to life, followed by a term of supervised release of no less than eight years, a fine of up to $10,000,000, and a special assessment fee of $100.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows:

    a) Two or more persons conspired or agreed to commit the crime of distributing and possessing with intent to distribute methamphetamine, a Schedule II controlled substance;

b) The defendant knowingly joined and participated in the conspiracy; and

c) The conspiracy involved five grams or more of methamphetamine (actual) or fifty grams or more of a mixture and substance containing a detectable amount of methamphetamine.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant and others joined a conspiracy and agreed to distribute and possess with intent to distribute methamphetamine. The defendant's role in the conspiracy was to receive methamphetamine from sources of supply, including co-defendants, and then store and sell it, or to help others receive and sell methamphetamine. Witnesses, co-defendants and co-conspirators would testify that the defendant knowingly and voluntarily joined in the conspiracy to distribute methamphetamine in and around the Eastern District of Tennessee.

In July of 2016, the Drug Enforcement Administration (DEA) and the Tennessee Bureau of Investigation (TBI) began an investigation into possible narcotics violations being committed by several individuals in the Eastern District of Tennessee and northern Georgia. Through controlled purchases of methamphetamine, witness and suspect interviews, and surveillance, the agents learned that co-defendant Mike Glass and others were going to the Atlanta area to obtain ounce- and kilogram-quantities of methamphetamine (actual) which they brought back to Tennessee to distribute it to others.

This information led the agents to obtain two Title III wiretap and electronic authorizations for Glass's phone. Those recorded calls and text messages, combined with surveillance, controlled purchases, and conspirator statements, provided evidence that thirteen individuals, including the defendant, were conspiring with each other to distribute methamphetamine. Specifically, calls and text messages between Glass and the defendant reflect the defendant arranging with Glass to obtain drugs from Glass, which the defendant would then sell to others.

In one phone call, on February 26, 2017, the defendant and Glass were discussing the sale of a camper. During the negotiations, Glass asked how much the owner wanted for the camper and the defendant said that the owner "said four." Glass responded by asking, "four zips?" The defendant said, "no, four thousand." If called upon at trial, an expert would testify that "zip" is a common term for an ounce, specifically an ounce of drugs. Glass then offered to buy it for "a thousand and a couple ounces," meaning $1,000 and two ounces, or 56 grams, of methamphetamine. After the defendant repeated that phrase, "a couple of ounces," Glass attempted to talk in code language by using the term "fertilizer seeds." Glass then offered to pay $1,000 and a total of four "seeds," which Glass said the owner would "make way more, way more than four thousand on that."

In another phone call, on February 20, 2017, the defendant asked Glass if he had the "goods." Glass responded that he did and they were the "best yet." During a phone call on March 3, 2017, Glass told the defendant not to say anything "about what we do" around the man with Glass because he didn't know about their drug dealing. Finally, on a text message, on March 28, 2017, the defendant told Glass that he had the money and asked if Glass had "some more." An expert in drug trafficking would testify at trial, if called upon to do so, that these communications were all related to the buying and selling of methamphetamine.

3

Most of these events occurred in the Eastern District of Tennessee. The defendant admits that he conspired with others in the indictment to distribute and possess with intent to distribute five grams or more of methamphetamine (actual) or fifty grams or more of a mixture and substance containing methamphetamine.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a sentence of 120 months' imprisonment followed by an 8-year term of supervised release is the appropriate disposition of this case. Additionally, the Court may impose any lawful fine(s) and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of 21 U.S.C. §§ 846, 841(a)(1), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The

defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a)    If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

    b)    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    c)    If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.    The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this

agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the agreed upon sentence as set out in paragraph 6 of this plea agreement. As part of this waiver, the defendant specifically waives the right to challenge the conditions of any term of supervised release. The defendant will not file a motion for downward departure, variance or a direct appeal of the defendant's conviction(s) and sentence. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant

violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

8

|  |  |
|---|---|
| _February 2018_ | J. DOUGLAS OVERBEY<br>UNITED STATES ATTORNEY<br><br>By: _/s/ (for)_<br>Terra L. Bay<br>Assistant United States Attorney |
| Date | |
| _12-11-17_ | _Brandon Horton_ |
| Date | Brandon Horton<br>Defendant |
| _12-11-17_ | _Dan R._ |
| Date | Daniel Ripper<br>Attorney for the Defendant |

9